643 A.2d 1162

**CLINTON COUNTY SOLID WASTE AUTHORITY,**

**v.**

**WAYNE TOWNSHIP, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1993.

Decided June 8, 1994.

634

636

Charles R. Rosamilia, Jr., for appellant.

Paul J. Ryan for appellee.

Before McGINLEY and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

Wayne Township (township) appeals from an order of the Court of Common Pleas of Clinton County (trial court) affirming in part and striking in part certain conditions the Wayne Township Board of Supervisors (Supervisors) imposed upon the granting of a conditional use to the Clinton County Solid Waste Authority (Authority).

The Authority owns a parcel of property located in Wayne Township, Clinton County. The property (Colucci property) is located adjacent to the present Clinton County Landfill. The Clinton County Landfill is a municipal waste landfill and is also owned by the Authority. The Authority submitted an application to the Supervisors for a conditional use permit [1] for the use of the Colucci property as a demolition waste landfill pursuant to section 504(4) of the township zoning ordinance.[2]

1. Pursuant to section 1501a. of Article XV—Supplemental Regulations of the township zoning ordinance, uses specified as conditional within the district regulations of the ordinance shall be permitted only after review by the planning commission and approval by the township Supervisors based on the determination that the conditional use is appropriate to the specific location for which it is proposed, consistent with the community development plan and in keeping with purposes and intent of the ordinance.

2. Section 504(4) of Article V–R–1 Residential–Rural Density District of the township's zoning ordinance provides that a sanitary landfill is a

On January 6, 1992, after a hearing, the Supervisors denied the Authority's application for the conditional use on the basis that the Authority did not prove that the demolition waste landfill site complied with the regulations of the Department of Environmental Resources (DER) and that the information supplied to the township was not supplied in time for meaningful review by the Wayne Township Planning Commission and Clinton County Planning Commission.

On January 29, 1992, the Authority appealed the denial of its conditional use application by the Supervisors to the trial court. On April 3, 1992, the trial court remanded the matter to the Supervisors and ordered that a conditional use be granted imposing reasonable conditions, if any, consistent with the law. On June 26, 1992, the Supervisors granted the Authority's application and imposed the following sixteen (16) conditions upon the Authority's use of the Colucci property.

1. The Clinton Solid Waste Authority shall not use the Old Hall Road for any traffic coming into or exiting the Clinton County Solid Waste Authority properties that are delivering material to be disposed of at said site.

2. Nothing shall be deposited at the site of the construction/demolition site other than construction and demolition waste.

3. The collection of construction/demolition materials shall be limited to appropriate waste generated in Clinton, Centre, and/or Lycoming Counties.

4. Where possible, an on-site inspection of all construction/demolition waste will be made by the Clinton County Solid Waste Authority. In the event that such an on-site

conditional use in a R–1 Residential–Rural Density District. Section 504(4) cross references to township supplemental zoning regulations, specifically section 1507.

Section 1507 of Article XV of the supplemental regulations requires that sanitary landfills, in districts where authorized as a conditional use, shall be regulated by the applicable laws of the Pennsylvania Department of Health. The parties do not dispute and the Supervisors recognized that the Department of Health should be interpreted to mean the Department of Environmental Resources.

inspection is not possible, then all uninspected loads will be machined scattered and inspected prior to burial.

5. To offset the cost of the Solid Waste Disposal Inspector, Wayne Township hereby imposes an additional charge of one ($1.00) dollar per ton for all construction demolition waste to be disposed of at the site of the former Colucci property. To clarify this, this would be one ($1.00) dollar additional over the one ($1.00) dollar mandated fee making the total fee payable to Wayne Township two ($2.00) dollars per ton.

6. The construction demolition waste disposal site at the former Colucci property will not be used until fenced in with an eight foot cyclone fence with three strands of barbed wire in such a manner as to protect said site from unauthorized intrusions.

7. Waste will not be disposed of at the permitted site until the installation of a live green screen is provided between the subject premises and the McKernan property, including three rows of evergreens with each row planted no more than ten (10) feet apart in a staggered fashion with one row to be larger evergreen trees, a second row to be higher shrubs, and a third row to be lower spreading shrubs, with plants to be of the size so that a live green barrier to a height of no less than ten (10) feet will be established within five (5) years from the date of planting. The Clinton County Solid Waste Authority shall be responsible for the installation of this live green barrier, and shall also be responsible for the upkeep and replacement of any trees that do not survive in said barrier.

8. The Clinton County Solid Waste Authority must control all fugitive dust generated from the streets, roadways and dispose of material so that such fugitive dust does not cause a nuisance to adjacent land owners and property.

9. Wayne Township reserves the right to have its Inspector, Code Officer, or Supervisors enter the site to make inspections of the demolition disposal site and applicable records.

10. The height of any change of existing grade located within the construction demolition site shall be limited to no more of an increase than 45 feet over those existing grades.

11. The Clinton County Solid Waste Authority shall maintain a 100 foot set-back from the McKernan property.

12. Copies of all records of inspections, minutes, etc. shall be provided to Wayne Township concerning the operation of the construction demolition site at no cost to the Township.

13. The operation of this site shall be contingent upon the final Department of Environmental Resources approval.

14. The Clinton County Solid Waste Authority shall install one operating fire hydrant with sufficient water pressures [sic] to meet the fire department requirements on the site of the former Colucci property.

15. All construction demolitions [sic] waste to this site shall be over the scales with no estimates to be allowed.

16. Tarping shall be required of all incoming loads to be acceptable at the site.

The Authority appealed to the trial court objecting to the propriety of the conditions. After oral argument and the submission of briefs, the trial court determined that the provisions of the Pennsylvania Municipal Waste Planning, Recycling and Waste Reduction Act (Waste Reduction Act)[3] were inapplicable to the present case and concluded that under the Pennsylvania Municipalities Planning Code (MPC)[4] and the township zoning ordinance, the Supervisors could impose reasonable conditions, as long as they were not inconsistent with DER regulations. The trial court opined that conditions which fall outside DER regulations would be upheld if they were reasonably related to the health, safety or welfare of the public.

Thereafter, the trial court entered an order affirming the Supervisors granting the conditional use permit, affirming conditions 1, 2, 8, 11, 13, 15, and 16 and striking conditions 3,

3. Act July 28, 1988, P.L. 556, *as amended*, 53 P.S. §§ 4000.101–4000.1904.

4. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11201.

4, 5, 6, 7, 9, 10, 12, and 14 imposed by the Supervisors. The township now appeals to this court.[5]

On appeal, the township presents two issues for our review: (1) whether the township, through its Supervisors, has the right to impose conditions when granting a conditional use under the township zoning ordinance, the Waste Reduction Act, and the MPC; and (2) whether the imposed conditions are not arbitrary, nor capricious and are reasonably related to the health, safety and welfare of the residents of the township.

■ In support of the first issue, the township argues that under section 603(c)(2) of the MPC, 53 P.S. § 10603(c)(2), its Supervisors have the explicit statutory authority to impose reasonable conditions on the grant of permission for a conditional use. Section 603(c)(2) of the MPC provides that:

**§ 10603. Ordinance provisions**

. . . .

(c) Zoning ordinances may contain:

. . . .

(2) provisions for conditional uses to be allowed or denied by the governing body pursuant to public notice and hearing and recommendations by the planning agency and pursuant to express standards and criteria set forth in the zoning ordinances. *In allowing a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance[.]*

53 P.S. § 10603(c)(2) (emphasis added).

In addition, the township contends that the proposed construction/demolition waste disposal site is subject to regulation under the Waste Reduction Act; therefore, under said act, the

5. This court's scope of review in a zoning case where the trial court has received no additional evidence is limited to determining whether the board of supervisors committed an abuse of discretion or error of law. *Board of Supervisors, Upper Southampton Township v. Zoning Hearing Board,* 124 Pa.Commonwealth Ct. 103, 555 A.2d 256 (1989).

township is expressly granted the right to adopt resolutions, ordinances, regulations and standards for the recycling, transportation, storage and collection of municipal waste.[6]

In response, the Authority contends that the trial court erred in finding that the Waste Reduction Act did not apply to the proposed demolition waste landfill. The Authority argues that the conditions imposed by the Supervisors on the use of its Colucci property are inconsistent with and in violation of both the Waste Reduction Act and the terms of the township zoning ordinance; therefore, the conditions should be stricken in their entirety.

After a thorough review of the Waste Reduction Act, this court believes that the trial court was correct in its conclusion that said act is inapplicable to the present case.

The Waste Reduction Act was enacted to provide for planning for the processing and disposal of municipal waste at municipal waste landfills. 53 P.S. § 4000.102. Municipal waste is defined in the Waste Reduction Act as:

6. Specifically, the township relies on section 304 of the Waste Reduction Act which provides, in part, that:

§ 4000.304. Powers and duties of municipalities other than counties

(a) Responsibility of other municipalities.—Each municipality other than a county shall have the power and its duty shall be to assure the proper and adequate transportation, collection and storage of municipal waste which is generated or present within its boundaries,
. . .

(b) Ordinances.—

(1) In carrying out its duties under this section, a municipality may adopt resolutions, ordinances, regulations and standards for the recycling, transportation, storage and collection of municipal waste or source-separated recyclable materials, which shall not be less stringent than, and not in violation of or inconsistent with, the provisions and purposes of the Solid Waste Management Act, this act and the regulations promulgated pursuant thereto.

(2) The host municipality shall have the authority to adopt reasonable ordinances concerning the hours and days during which vehicles may deliver waste to the facility and the routing of traffic on public roads to the facility. Such ordinances may be in addition to, but not less stringent than, not inconsistent with and not in violation of, any provision of the Solid Waste Management Act, . . .

53 P.S. § 4000.304.

Any garbage, refuse, industrial lunchroom or office waste and other material, including solid, liquid, semisolid or contained gaseous material, resulting from operation of residential, municipal, commercial or institutional establishments and from community activities and any sludge not meeting the definition of residual or hazardous waste in the Solid Waste Management Act from a municipal, commercial or institutional water supply treatment plant, wastewater treatment plant or air pollution control facility. The term does not include source-separated recyclable materials.

53 P.S. § 4000.103.

A municipal waste landfill is defined in the Waste Reduction Act as:

Any facility that is designed, operated or maintained for the disposal of municipal waste, whether or not such facility possesses a permit from the department under the Solid Waste Management Act. *The term shall not include any facility that is used exclusively for disposal of construction/demolition waste or sludge from sewage treatment plants or water supply treatment plants.*

53 P.S. § 4000.103 (emphasis added).

There is no definition of what constitutes construction/demolition waste or a construction/demolition waste landfill in the Waste Reduction Act. However, DER regulations promulgated to regulate the management of municipal waste under the Solid Waste Management Act[7] separately define construction/demolition waste and construction/demolition waste landfill, respectively, as:

Solid waste resulting from the construction or demolition of buildings and other structures, including, but not limited to, wood, plaster, metals, asphaltic substances, bricks, block

7. Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

and unsegregated concrete. The term also includes dredging waste.

25 Pa.Code § 271.1.

A facility using land exclusively for the disposal of construction/demolition waste....

*Id.*

Therefore, it is clear from the language and purpose of the Waste Reduction Act and DER regulations that construction/demolition waste landfills are not governed by the Waste Reduction Act but are governed by the Solid Waste Management Act. The Waste Reduction Act is silent with respect to construction/demolition waste landfills, except in section 103 which specifically excludes from the Waste Reduction Act any facility that is used exclusively for disposal of construction/demolition waste.

The Authority argues that the provisions of the Waste Reduction Act are applicable because the demolition waste landfill will be operated in conjunction with the Clinton County Landfill, which is a municipal waste landfill, located adjacent to the Colucci property presently being operated by the Authority. The Authority contends that the demolition waste landfill will not be used exclusively for construction/demolition waste. The proposed conditional use, the Authority argues, would simply allow the Authority to deposit the demolition waste in a section of the Clinton County Landfill separate and apart from the municipal waste disposal site.

A review of the record in this case reveals that the Authority intends to use the Colucci property exclusively as a demolition waste landfill site. During the hearings before the Supervisors concerning the granting of the conditional use and the imposition of the conditions, the Authority's witnesses repeatedly emphasized that while all truck traffic would come into the existing municipal waste landfill in order to be weighed on a scale, all demolition waste would be directed to the demolition waste landfill site for disposal. Reproduced Record, Transcript of December 20, 1991, pp. 37–38; Tran-

script of May 21, 1992, pp. 17–18.[8] Anything that was not demolition waste would be directed to the municipal waste landfill site. *Id.*

In addition, the witnesses for the Authority stressed that in order to operate the demolition waste landfill, the Authority would have to comply with the specific DER regulations promulgated pursuant to the Solid Waste Management Act governing construction/demolition waste landfills. *See* 25 Pa. Code § 277.1–277.322. For example, under 25 Pa.Code § 277.201, municipal waste other than construction/demolition waste may not be disposed at a construction/demolition landfill. Additionally, 25 Pa.Code §§ 277.101–277.192 governs the issuance of a permit to operate a construction/demolition waste landfill and under section 277.201(a) said landfill may not be operated or owned without a DER issued permit. As such, the Authority is required to obtain a separate permit to operate the demolition waste landfill site.

It is clear from the record that the Authority intends to use the Colucci property exclusively as a demolition waste landfill site. Under DER regulations a separate permit is required to operate a demolition waste landfill and the demolition waste landfill must be used exclusively for the disposal of construction/demolition waste. The fact that the Authority operates a municipal waste landfill adjacent to the proposed site for the demolition waste landfill is irrelevant.

Accordingly, the Waste Reduction Act is inapplicable to the present situation.

Next, we will address the Supervisors' right to impose conditions when granting a conditional use under the township zoning ordinance and the MPC. Under section 603(c)(2) of the MPC, it is clear that the Supervisors, as the

8. This court wishes to point out to the township, as the appellant in this appeal, that in accordance with Pa.R.A.P. 2173, the reproduced record shall be numbered consecutively and separately in Arabic figures followed by a small "a". The township's failure to comply with this rule only results in making this court's review and citation of the record more difficult.

governing body of the township,[9] have the authority to grant conditional uses pursuant to the express standards and criteria set forth in the zoning ordinances enacted by the Supervisors to regulate land use pursuant to the police power. 53 P.S. § 10603(c)(2); 53 P.S. § 10601; *Hill v. Zoning Hearing Board of Maxatawny Township,* 142 Pa.Commonwealth Ct. 539, 597 A.2d 1245 (1991). It is also clear that the Supervisors have the authority, pursuant to section 603(c)(2) of the MPC, to attach such reasonable conditions and safeguards, in allowing a conditional use, in addition to those expressed in the zoning ordinance, as it may deem necessary to implement the purposes of the MPC and the zoning ordinance. *Id.*

The applicable township zoning ordinance, Article V–R–1 Residential–Rural Density District, section 504(4), provides that a sanitary landfill is a conditional use in a R–1 Residential–Rural Density District. Section 504(4) cross references to township supplemental regulations, section 1507. It is undisputed that section 1507 of the supplemental regulations requires that sanitary landfills in districts in which they are authorized as a conditional use shall be regulated by the applicable laws of the DER.[10]

Therefore, in accordance with the MPC and the township zoning ordinance governing conditional uses, the Supervisors may impose reasonable conditions upon the granting of a conditional use for a sanitary landfill as long as the conditions are not inconsistent with DER laws and regulations. The parties do not dispute that the township's ordinance regulating sanitary landfills encompasses demolition waste landfills. Accordingly, any conditions which the Supervisors wish to impose upon the proposed demolition waste landfill pursuant to its authority under section 603(c)(2) of the

**9.** Governing body within municipalities planning code law is township commissioners or supervisors or borough councilmen. *Commonwealth v. Bucks County,* 8 Pa.Commonwealth Ct. 295, 302 A.2d 897 (1973).

Section 302(21) of Article III–Glossary of Zoning Terms of the township zoning ordinance provides that conditional uses are allowed or denied by the Municipal Governing Body after recommendations by the Planning Agency.

**10.** *See* footnote 1.

MPC which are not regulated by the applicable laws and regulations of the DER, must be upheld if the conditions are reasonably related to the health, safety or welfare of the public.[11]  With this in mind, this court agrees with the trial court's affirmance of conditions 1, 2, 8, 11, 13, 15, and 16 imposed by the Supervisors.

Condition No. 1 precludes the Authority from utilizing Old Hall Road for any traffic coming into or exiting the Authority's properties that are delivering material to be disposed of at the demolition waste landfill site.  The record reveals that the Authority assured the Supervisors that Old Hall Road would not be used to deliver material to the demolition waste landfill; therefore, Condition No. 1 will be affirmed on that basis.

██  Conditions 2, 8, 11, 13, and 15 are all consistent with DER regulations.  Condition No. 2 prohibits the disposal of all materials at the site which are not construction and demolition waste.  DER regulation 25 Pa.Code § 277.201(d) specifically provides that municipal waste other than construction/demolition waste may not be disposed at a construction/demolition waste landfill.

Condition No. 8, requiring the Authority to control all fugitive dust, is consistent with DER regulation 25 Pa.Code § 277.217.  Section 277.217 mandates that an operator of a construction/demolition waste landfill implement fugitive dust control measures.

Condition No. 11 requires a 100 foot set back from the McKernan    property.    DER    regulation    25    Pa.Code

---

**11.**  An applicant for a conditional use permit has the initial burden of proving compliance with specific requirements in the zoning ordinance. *Achey Appeal*, 86 Pa.Commonwealth Ct. 385, 484 A.2d 874 (1984). (The granting of the conditional use permit to the Authority by the Supervisors is not an issue in this appeal, only the conditions imposed by the Supervisors upon the use.)  After an applicant meets his initial burden, the burden is then upon the objectors to the conditional use to show a high degree of probability that the use will adversely impact on the public interest;  the mere possibility of adverse impact is not enough.  *Id.*  Therefore, the burden is upon the township to justify the conditions imposed by the Supervisors upon the Authority's proposed use.

§ 277.202(a)(8) provides that no construction/demolition waste landfill may be operated within 100 feet of a property line.

Condition No. 13 requires that the operation of the site shall be contingent upon final DER approval. DER regulation 25 Pa.Code § 201(a) prohibits the operation or ownership of a construction/demolition waste landfill without a DER issued permit.

Condition No. 15 requires all construction/demolition waste to be weighed on a scale. DER regulation 25 Pa.Code § 277.214 mandates that an operator of a construction/demolition waste landfill shall accurately measure waste by volume or weight prior to unloading.

Condition No. 16 requires all incoming loads to be covered by a tarp. While DER regulations do not address the tarping of incoming loads, the Vehicle Code, 75 Pa.C.S. § 4903(c.1), specifically requires that refuse or rubbish being transported to a disposal site must be covered to prevent any of the load from escaping.

This court will examine individually the remaining conditions imposed by the Supervisors that the trial court determined should be stricken.

Condition No. 3 limits the collection of construction/demolition waste to appropriate waste generated in Clinton, Centre and/or Lycoming Counties. The township argues that the health, safety and welfare concern of the township with respect to Condition No. 3 is that the concentration of such high amounts of waste in a unlined landfill which does not meet the modern technological standards for household waste represents a significant risk of environmental impact on the township.

It is clear that in order to operate the construction/demolition waste landfill, the Authority is prohibited under DER regulations from disposing of any type of waste other than construction/demolition waste as defined in DER regulations. *See* 25 Pa.Code § 277.201(d). These regulations prohibit the disposal of household waste or municipal waste at a construc-

tion/demolition waste landfill. In addition, the operation and ownership of a construction/demolition waste landfill is governed by the Solid Waste Management Act and DER regulations to reduce the risk of environmental impact on municipalities.

Moreover, the township's contention that bringing in waste from numerous townships will adversely affect the health, safety and welfare of its citizens must also fail. The township has admitted that the point of origin of the waste does not affect the health, safety and welfare of the township. Therefore, the Supervisors abused their discretion when imposing Condition No. 3 and we affirm the trial court's striking of this condition.

■ Condition No. 4 requires an on-site inspection of all construction/demolition waste by the Authority and if on-site inspection is not possible, then all uninspected loads must be machined scattered and inspected prior to burial. The township argues that this condition is specifically aimed at protecting the safety, health, and welfare of the community. The township contends that the Authority has no means to guarantee that hazardous or non construction/demolition waste would be removed prior to disposal and that an inspection requirement is not contrary to DER regulations.

We agree and believe that the imposition of Condition No. 4 was reasonable and should not have been stricken by the trial court. DER regulations do not require that incoming loads be inspected; therefore, there is no guarantee that the Authority will inspect the incoming construction/demolition waste before it is disposed of at the site. The Authority's witnesses were questioned on cross-examination as to the inspection of materials being disposed of at the demolition waste landfill. Reproduced Record, Transcript of December 21, 1991, pp. 50–52; Transcript of May 21, 1992, pp. 17–18. The Authority's witness stated that there would certainly be some kinds of checks made as the material is dumped out of a truck; however, no specifics were given as to an official inspection plan by the Authority. *Id.*

Under section 603(c)(2) of the MPC, the Supervisors are empowered with the authority to impose reasonable conditions and safeguards. Condition No. 4 qualifies as one of those safeguards.

▮ Condition No. 5 requires the imposition of an additional charge of one dollar ($1.00) per ton for all construction/demolition waste disposed of at the site to offset the cost of a solid waste disposal inspector. DER regulations do not address the imposition of such a fee. The township provides no argument nor points to any evidence in the record to support that Condition No. 5 was imposed for the benefit of the health, safety and welfare of the community. Therefore, the Supervisors abused their discretion in imposing Condition No. 5 and the trial court was correct in striking this condition.

▮ Condition No. 6 requires the construction of an eight foot cyclone fence with barbed wire to protect the site from unauthorized intrusions. The trial court struck Condition No. 6 because the authority is already required under DER regulations to install fencing around the site and because the record is silent as to the necessity for requiring the fencing.

Under DER regulations, an operator of a construction/demolition waste landfill is required to construct and maintain a fence or other suitable barrier around the site sufficient to prevent unauthorized access. 25 Pa.Code § 277.212. To comply with this regulation, the Authority's witnesses testified that the Authority would "probably fence it in with the same eight-foot chain link fence, three stand barbed wire we have now, which is certainly well considered access control." Reproduced Record, Transcript of May 21, 1992, pp. 21–22.

Based upon the DER regulations requiring a fence and the testimony of the Authority that the property would be fenced in accordance with the regulations, we believe that the trial court should not have stricken Condition No. 6. It is clearly consistent with DER regulations and the Supervisors did not abuse their discretion or commit an error of law when imposing Condition No. 6.

■ Condition No. 7 requires the planting of a live green screen consisting of evergreens and shrubs, between the demolition waste landfill site and an adjoining property. DER regulations do not address the planting of a live green screen. The township contends that the imposition of Condition No. 7 is to control all fugitive dust generated from the site to protect the health, safety and welfare of the community.

■ The issue of controlling fugitive dust is addressed in this court's discussion regarding Condition No. 8 which requires the Authority to control all fugitive dust generated from the site. As we stated previously, Condition No. 8 is consistent with DER regulations and we upheld the Supervisor's imposition of this condition. In addition, it is well settled that aesthetic considerations cannot justify a zoning decision. *Berman v. Board of Commissioners*, 147 Pa.Commonwealth Ct. 405, 608 A.2d 585 (1992). Therefore, the Supervisors abused their discretion in imposing Condition No. 7 and the trial court was correct in striking this condition.

■ Condition No. 9 gives the township the right to have its inspector, code officer or supervisors enter the site to make inspections of the demolition disposal site and applicable records. The township argues that Condition No. 9 is consistent with existing laws but fails to give this court any citations as to which laws the township is relying upon.

As pointed out in this court's discussion of Condition No. 4, which requires the Authority to inspect incoming loads, DER regulations do not require on-site inspections of the material deposited at the site by an operator. However, we found that Condition No. 4 was reasonable and imposed as an additional safeguard pursuant to the Supervisor's authority under section 603(c)(2) of the MPC. Accordingly, the Authority will be required to conduct on-site inspections of all materials disposed of at the demolition waste landfill.

In addition, it was brought out at the proceedings before the Supervisors that DER regularly makes unannounced inspections of permitted waste facilities. Reproduced Record, Transcript of December 20, 1991, p. 87. In light of the fact that

DER regularly makes unannounced inspections of permitted waste facilities, we believe that permitting the township to also make inspections may lead to problems with inconsistent enforcement by the two separate agencies.

Accordingly, the Supervisors abused their discretion in imposing Condition No. 9. Therefore, the trial court did not err in striking this condition.

Condition No. 10 imposes a height restriction of 45 feet on the demolition waste landfill. DER regulations impose a grade restriction on demolition waste landfills to a final slope not exceeding 33%, including slopes between benched terraces. 25 Pa.Code § 277.233(f). As the sloping and grading requirements of a demolition waste landfill are addressed in DER regulations, the trial court was correct in striking Condition No. 10 as being inconsistent with DER regulations.

Condition No. 12 requires copies of inspections and minutes be provided to the township. There are no DER regulations requiring such a procedure and the township does not provide this court with any record evidence as to how such a condition threatens the health, safety and welfare of the community. Therefore, the trial court was correct in striking Condition No. 12.

Condition No. 14 requires the Authority to install a fire hydrant on the demolition waste landfill site. DER regulations only require that an operator of a demolition waste landfill have available portable fire extinguishers and fire control equipment. 25 Pa.Code § 277.302.

The trial court determined that the record below was silent as to the need for a fire hydrant. However, a review of the proceedings before the Supervisors on May 21, 1992 reveals that the issue of a fire hydrant was discussed. Reproduced Record, Transcript of May 21, 1992, pp. 43–44. The Authority's witness was questioned by the Supervisors as to whether the Authority had any plan for fire. *Id.* The witness responded that they extended eight and six inch water mains throughout most of the demolition waste landfill site. *Id.* In

addition, the witness stated that "I'm sure one of the things we'd probably want to do is add a hydrant down there for [sic] demolition site. We'd have water on both sides of it." *Id.*

Due to the Authority's statement in response to the concerns of the Supervisors that it would install a fire hydrant and the fact that Condition No. 14 is not inconsistent with DER regulations, we believe that the Supervisors did not abuse their discretion in imposing this condition. Therefore, the trial court erred in striking Condition No. 14.

Accordingly, the trial court's order is: (1) affirmed with respect to its affirmance of the granting of the conditional use, (2) affirmed with respect to its affirmance of conditions 1, 2, 8, 11, 13, 15, and 16 imposed by the Supervisors; (3) affirmed with respect to its striking of conditions 3, 5, 7, 9, 10, and 12 imposed by the Supervisors; and (4) reversed with respect to its striking of conditions 4, 6 and 14 imposed by the Supervisors.

## ORDER

NOW, this 8th day of June, 1994, the order of the Court of Common Pleas of Clinton County, dated April 13, 1993, at No. 142–92, is hereby:

1. Affirmed with respect to the order's affirmance of the granting of the conditional use permit by the Wayne Township Board of Supervisors to the Clinton County Solid Waste Authority;

2. Affirmed with respect to the order's affirmance of conditions 1, 2, 8, 11, 13, 15, and 16 imposed by the Wayne Township Board of Supervisors upon the conditional use permit;

3. Affirmed with respect to the order's striking of conditions 3, 5, 7, 9, 10, and 12 imposed by the Wayne Township Board of Supervisors upon the conditional use permit;

4. Reversed with respect to the order's striking of conditions 4, 6 and 14 imposed by the Wayne Township Board of Supervisors upon the conditional use permit.